IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-23005-CV-KING

JANE DOE,

    Plaintiff,

vs.

PRINCESS CRUISE LINES, LTD,

    Defendant.
_____/

## ORDER DENYING MOTION FOR RECONSIDERATION

THIS CAUSE comes before the Court upon Defendant's Motion for Reconsideration (DE #57). Plaintiff has filed a Response (DE #81) and Defendant has replied (DE #86). After careful consideration of the parties' arguments and the legal authorities cited therein, the Court determines that the motion should be denied.

I.    **Introduction**

The facts, procedural history, and legal issues involved in this case have already been recounted in the Court's Order Denying Motion to Compel Arbitration (DE #55), and will not be fully recounted here. Briefly, Plaintiff, a crewmember and employee aboard one of Defendant's cruise ships, alleges that she was drugged and raped by fellow crewmembers. She also alleges that Defendant refused to provide her with proper medical treatment and intentionally destroyed evidence of the rape. She has filed a ten-count complaint, alleging various causes of action arising out of that incident. Defendant filed a Motion to Compel Arbitration, arguing that Plaintiff's employment contract requires this claim to be submitted to binding arbitration in

1

Bermuda. After extensive briefing, that Motion was denied (DE #55). Thereafter, Defendant filed the instant Motion for Reconsideration. Defendant makes four arguments for why the Court erred in denying the Motion to Compel Arbitration, each of which will be addressed in turn.

## II. Arguments for Reconsideration

As an initial matter, the Court addresses the applicable standard for a Motion for Reconsideration. "[T]here are three major grounds which justify reconsideration: (1) an intervening change in controlling law; (2) the availability of new evidence; and (3) the need to correct clear error or prevent manifest injustice." *Ass'n for Disabled Americans, Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 477 (S.D. Fla. 2002). Although Defendant does not specify under which ground it seeks reconsideration, Defendant does not argue that there has been an intervening change in the law or that new evidence has become available. Thus, the Court will assume that Defendant seeks reconsideration under the third prong. Moreover, "[a] motion for reconsideration should not be used as a vehicle to present authorities available at the time of the first decision or to reiterate arguments previously made." *Z.K. Marine, Inc. v. M/V Archigetis*, 808 F. Supp. 1561, 1563 (S.D. Fla. 1992). *See also King v. Farris*, 2009 U.S. App. LEXIS 27604, *3 (11th Cir. Dec. 16, 2009) ("[A] motion that merely republishes the reasons that had failed to convince the tribunal in the first place gives the tribunal no reason to change its mind." (quotations and citations omitted)).

The instant motion makes the same arguments as the initial motion, albeit from a different angle. These new angles cite to the same authorities which the Court has already considered and which have already been extensively briefed. Furthermore, all of these arguments were available to Defendant at the time of the first motion. Thus, Defendant has failed

to demonstrate the need to correct clear error or prevent manifest injustice, and the Motion for Reconsideration could be denied on that basis alone. However, in the interest of thoroughness and to clarify the Court's earlier Order, the Court will address Defendant's arguments.

A.   *Bautista* and the Convention Act

Defendant's first argument is that the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("the Convention"), its implementing Act,[1] and the Eleventh Circuit's decision in *Bautista v. Star Cruises,* 396 F.3d 1289 (11th Cir. 2005), require Plaintiff's claim to be submitted to arbitration. Defendant argues that, under *Bautista*, once a Court determines that the four jurisdictional prerequisites are met and that no defenses exist, the inquiry ends and the Court must compel arbitration.[2] The four jurisdictional prerequisites are: "(1) [T]here is an agreement in writing within the meaning of the Convention; (2) the agreement provides for arbitration in the territory of a signatory of the Convention; (3) the agreement arises out of a legal relationship, whether contractual or not, which is considered commercial; and (4) a party to the agreement is not an American citizen, or that the commercial relationship has some reasonable relation with one or more foreign states." *Id.* at 1295 n. 7.

Assuming that the final three prongs are met, Defendant's argument fails under the first prong. As the Eleventh Circuit has subsequently noted in *Thomas v. Carnival Corp.,* the first jurisdictional prerequisite is: "[T]here is an agreement in writing to arbitrate *the dispute.*" 573 F.3d 1113, 1117 (11th Cir. 2009) (emphasis added). That is, the dispute must actually fall within the scope of the arbitration provision. In fact, the *Thomas* court, in reversing the district court's

---

[1] The Convention, 21 U.S.T. 2517, 330 U.N.T.S. 3, is the treaty that governs international arbitration agreements such as the one at issue in this case. Its implementing legislation is codified at 9 U.S.C. §§ 201-208.

[2] Defendant does not challenge the Court's "scope" analysis; rather, Defendant maintains that the Court should not have undertaken a scope analysis at all. Therefore, the Court will not repeat that analysis here, as it can be found in the Court's initial Order Denying Motion to Compel Arbitration.

3

decision to compel arbitration, conducted an extensive analysis of whether the dispute in question arose out of the scope of the plaintiff's employment or the terms of his employment agreement. *Id.* at 1117-18 ("It is not enough that the dispute simply arose from his work on the Imagination, or arose after the New Agreement was signed, for that matter. The disputes must have some actual relation to the New Agreement."). Thus, it is clear that the first prong of the jurisdictional analysis requires the Court to determine whether the arbitration clause actually covers the dispute in question. Because it does not (see the Court's Order Denying Motion to Compel Arbitration, D.E. #55), the first jurisdictional requirement is not met.[3]

Indeed, even without relying on *Thomas*, the Court would reach the same conclusion. Relying on a statement in *Bautista* that a court "must" order arbitration if the jurisdictional prerequisites exist, *Bautista*, 396 F.3d at 1294, Defendant argues that this Court should blindly order arbitration without ever determining whether the dispute falls within the arbitration provision's scope—that is, whether Plaintiff actually agreed to arbitrate this claim. That is not what *Bautista* says; rather, *Bautista* simply assumed that the dispute fell within the scope of the arbitration agreement, as that issue was not before the court. Thus, *Bautista* does not obviate the need for a district court to actually examine and give effect to the language of the contract itself, even before determining whether the jurisdictional prerequisites are met. *See Sea Bowld Marine Group, LDC v. Oceanfast Pty, LTD*, 432 F. Supp. 2d 1305, 1309 (S.D. Fla. 2006) ("[D]espite the

---

[3] Defendant also notes in passing that the instant arbitration agreement is an international one, governed by the Convention Act and subject to a specific body of case law, whereas other cases have involved domestic arbitration agreements covered by the Federal Arbitration Act  The Court recognizes that courts have generally been stricter in interpreting international agreements because of differences between the language in the Acts; however, in this case it is a distinction without a difference. Moreover, as noted in the foregoing analysis, the first step under either Act is to determine the scope of the arbitration provision, even if that inquiry is a limited one. *See Cape Flattery Ltd. v. Titan Mar. LLC*, 607 F. Supp. 2d 1179, 1183 n. 4 (D. Haw. 2009) ("The first question [under the Convention Act] appears to parallel the inquiry under Chapter 1 of the FAA of determining '(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue.'" (citing cases)).

4

clear favoritism shown arbitration, it is equally clear that a court will not force arbitration where it is not wanted. . . . Arbitration agreements must be enforced according to their terms.").

Thus, as stated in the Court's initial Order, the Court must first examine the factual allegations of the Complaint to determine whether the dispute falls within the scope of the arbitration provision. *See Gregory v. Electro-Mechanical Corp.*, 83 F.3d 382, 384 (11th Cir. 1996) ("Whether a claim falls within the scope of an arbitration agreement turns on the factual allegations in the complaint rather than the legal causes of action asserted."); *Chloe Z Fishing Co. v. Odyssey Re (London) Ltd.*, 109 F. Supp. 2d 1236, 1252 (S.D. Cal. 2000) ("Having found the existence of a valid agreement to arbitrate, the Court must determine whether the scope of the arbitral clauses--as evidenced by their specific language--includes the subject of the parties' present dispute."). This inquiry requires the Court to interpret the language of the contract, giving effect to all phrases in a manner consistent with the intentions and reasonable expectations of the parties. In short, arbitration may only be compelled when the parties have actually agreed to arbitrate the dispute. *See In re Managed Care Litig.*, 2003 U.S. Dist. LEXIS 23035, *19-21 (S.D. Fla. Sept. 15, 2003) ("Whether a matter is within the scope of an arbitration provision is a matter of the parties' intent. . . . Even though there is a strong federal policy favoring it, arbitration is a matter of contract, and parties can only be required to submit disputes to arbitration if they agreed to do so." (quotations and citations omitted)); *Eassa Props. v. Shearson Lehman Bros., Inc.*, 851 F.2d 1301, 1304 n.7 (11th Cir. 1988) ("While federal law may govern the interpretation and enforcement of a valid arbitration agreement, state law governs the question of whether such an agreement exists in the first instance."). Accordingly, "courts are not to twist the language of the contract to achieve a result which is favored by the federal policy but contrary to the intent of the parties." *Goldberg v. Bear, Stearns & Co.*, 912 F.2d 1418, 1419-20

5

(11th Cir. 1990). *See also Kuklachev v. Gelfman*, 600 F. Supp. 2d 437, 460-61 (E.D.N.Y. 2009) ("[A]s with any contractual matter, the main concern in deciding the scope of arbitration agreements is to faithfully reflect the reasonable expectations of those who commit themselves to be bound by them. . . .The inquiry is fact-based and respects the parties' reasonable expectations in forming the contract." (quotations and citations omitted)).

Here, as the Court found in its initial Order (DE #55), the factual allegations of the Complaint do not fall within the scope of the arbitration provision because they do not arise out of the scope of Plaintiff's employment.[4] The Court must interpret the provision as meaning exactly what it says: If the dispute does not arise out of Plaintiff's employment, the parties have not agreed to arbitrate it. Defendant asks the Court to simply ignore the limiting language, which the Court cannot do. *See S&B/Bibb Hines Pb 3 Joint Venture v. Progress Energy Fla., Inc.*, 2010 U.S. App. LEXIS 2875, *6 (11th Cir. Feb. 11, 2010) ("It is a well-settled rule of contract interpretation that courts must read provisions of a contract harmoniously in order to give effect to all portions thereof."); *Volt Info. Scis. v. Bd. of Trs.*, 489 U.S. 468, 478 (1989) ("Accordingly, we have recognized that the FAA does not require parties to arbitrate when they have not agreed to do so, . . . nor does it prevent parties who do agree to arbitrate from excluding certain claims from the scope of their arbitration agreement. It simply requires courts to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms." (quotations and citations omitted)). As an illustration, if the arbitration provision expressly stated that it did not apply to claims arising out of a sexual assault, Defendant would not and could not argue that this claim should proceed to arbitration, even though all four jurisdictional

---

[4] For convenience, the Court uses the phrase "arising out of the scope of employment" as shorthand for the limiting language in the arbitration provision. The relevant text of the provision is: "The Company and Crew member agree that any and all disputes, claims, or controversies whatsoever . . . relating to or in any way arising out of *or connected with the crew agreement, these terms, or services performed for the company* . . . shall be referred to and resolved exclusively by binding arbitration . . . in Bermuda."

6

prerequisites would be met, and no defenses would apply. No one could argue that the claim should proceed to arbitration because the terms of the provision itself dictate that such a claim should not be arbitrated. By its own terms, the arbitration provision simply would not apply to this situation. The circumstances are analogous here: The arbitration provision simply does not govern this particular dispute between the parties. To hold otherwise would render the limiting language meaningless; it would read the limiting language out of the contract, which would broaden the provision to encompass any claim that Plaintiff could ever bring against Defendant. That is simply not what the contract says.

Defendant makes much of the fact that numerous courts have upheld the validity of this very arbitration provision. The Court does not disagree—this provision is perfectly valid and enforceable, it just does not apply to the present circumstances because the parties did not agree to arbitrate this dispute. A valid and enforceable contract provision cannot be applied in situations where the parties agreed it would not apply. Holding that this dispute should proceed to arbitration would contravene the intent and reasonable expectations of the parties, as the language does not indicate an intent to arbitrate this dispute, and Plaintiff could not have reasonably anticipated when she signed the contract that she was agreeing to arbitrate (and forfeiting her right to go to court) a claim arising out of a sexual assault. Despite the federal policy favoring arbitration, the Court cannot compel arbitration if the parties did not agree to it. Thus, *Bautista* and the Convention Act do not require this claim to be arbitrated.

B.  **The Fifth Circuit's Decision in *Jones v. Halliburton***

Defendant's second argument is that the Court misapplied the Fifth Circuit's recent decision in *Jones v. Halliburton*, 583 F.3d 228 (5th Cir. 2009).[5] The *Jones* court, in nearly

---

[5] The Court's *Jones* analysis is discussed in detail in the Court's initial Order, and will not be repeated here.

7

identical factual circumstances to those of the instant case, upheld the district court's denial of a motion to compel arbitration on four claims arising out of a sexual assault. Defendant argues that, because the *Jones* court compelled arbitration of the remaining counts, the Court should do the same here.

However, this argument fails because of Defendant's incorrect characterization of the *Jones* holding. In *Jones*, the plaintiff asserted ten causes of action: 1) negligent hiring and supervision, 2) intentional infliction of emotional distress, 3) false imprisonment, 4) assault and battery, 5) fraud in the inducement to enter the employment contract, 6) fraud in the inducement to agree to arbitration, 7) negligent undertaking, 8) sexual harassment under Title VII, 9) retaliation, and 10) breach of contract. After the district court declined to compel arbitration on the first four counts, the defendant appealed, challenging this ruling. *Id.* at 230. The plaintiff did not cross-appeal, and so the issue of whether the remaining claims should proceed to arbitration was not before the court. Thus, the Fifth Circuit merely held that the district court was correct to refuse arbitration of the first four claims (negligent hiring/supervision, intentional infliction of emotional distress, false imprisonment, assault and battery), but said nothing about whether the other claims should be arbitrated. *Id.* at 242.

Moreover, even if Defendant's characterization of *Jones* were correct, the Court would still not reach Defendant's desired result because Plaintiff's claims are different from those asserted in *Jones*. Here, Plaintiff asserts the following causes of action: 1) Jones Act negligence, 2) intentional infliction of emotional distress, 3) false imprisonment, 4) fraudulent misrepresentation of Plaintiff's post-trauma options, 5) unseaworthiness, 6) failure to provide prompt medical treatment, 7) failure to provide maintenance and cure, 8) spoliation of evidence, 9) invasion of privacy, and 10) failure to pay seaman's wages. Of these ten claims, only the first

8

three (negligence, intentional infliction of emotional distress, false imprisonment) arguably overlap with the claims in *Jones*, and these three are the very claims that the *Jones* court held were not subject to arbitration. The remaining claims did not even arise in *Jones*, and therefore, even if the Court followed Defendant's argument, it would not require the remaining claims to proceed to arbitration.

Finally, it is not contradictory, as Defendant argues, to say that this dispute does not arise out of the scope of Plaintiff's employment, even though some of the claims asserted depend on her status as a seaman. As the *Jones* court noted, "[t]he one consensus emerging from this analysis is that it is fact-specific . . . . When deciding whether a claim falls within the scope of an arbitration agreement, courts 'focus on factual allegations in the complaint rather than the legal causes of action asserted.'" *Id.* at 240 (quoting W*aste Mgmt. Inc. v. Residuos Industriales Multiquim, S.A. de C.V.*, 372 F.3d 339, 344 (5th Cir. 2004)). Indeed, in an analogous example, the court even noted that it was not contradictory for the plaintiff to be eligible for workers compensation (which requires the injury to have some connection with employment), while simultaneously not being subject to arbitration because the dispute did not arise out of her employment. *Jones*, 583 F.3d at 239. Thus, even though some of Plaintiff's *legal* causes of action depend on her status as seaman, the *facts* as pled demonstrate that the dispute did not arise out of her employment. Therefore, all of Defendant's *Jones*-based arguments are without merit.

C. **Applying Bermuda Law to the Scope of the Arbitration Provision**

Defendant's third argument is that the Court erred in applying U.S. law to determine whether the dispute fell within the scope of the arbitration provision, when the contract calls for the application of Bermuda law. Defendant cites no law for this proposition, and in fact the cases demonstrate that, when an arbitration provision specifies that arbitration will proceed in a

9

foreign forum applying foreign substantive law, U.S. federal law still applies to determine the scope of the arbitration provision. *See Sea Bowld*, 432 F. Supp. 2d at 1312 ("While these designations are relevant to the substantive law to be used, and the location of arbitration, they say nothing, and mean nothing, as to the threshold issue of arbitrability. Federal law controls my interpretation of whether the Arbitration Clause covers the dispute in this case."); *Olsher Metals Corp. v. Olsher*, 2003 U.S. Dist. LEXIS 27516, *12-13 (S.D. Fla. Mar. 25, 2003) ("In deciding whether to compel arbitration of a dispute, a court must first determine whether the parties agreed to arbitrate that particular dispute. 'The court is to make this determination by applying the federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the [FAA].' To determine whether a particular dispute is arbitrable, a court must interpret the scope of the arbitration clause, and that is a matter of federal law." (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, 473 U.S. 614, 626 (1985) and collecting cases)). Thus, Bermuda law does not govern the scope of the arbitration provision.

### D. The Anti-Suit Injunction

Defendant's fourth and final argument is that the Court erred in not enforcing the anti-suit injunction issued by the Bermuda Supreme Court that purportedly enjoined Plaintiff from bringing this lawsuit. Defendant further contends that this issue is now the subject of two conflicting orders. This argument fails for several reasons. First and foremost, the two orders do not conflict. The Bermuda order specifically states that Plaintiff is enjoined from bringing any claims "arising out of her employment" with Defendant (DE #9-1). As the Court has already determined, this dispute does not arise out of Plaintiff's employment with Defendant. Thus, the two orders do not conflict. Second, it appears that the Bermuda court had before it only Defendant's "Ex Parte Summons and the First Affidavit of Ms. Dana Berger," but not the

contract itself containing the arbitration provision. *Id.* The affidavit, moreover, merely states that the parties' relationship is governed by the employment contract, but makes no mention of the facts giving rise to the dispute or the allegations of rape by fellow crewmembers. Thus, the Bermuda court could not have determined whether Plaintiff's claim fell within the scope of the arbitration provision, or whether Plaintiff could have asserted any defenses thereto. Moreover, even if the Bermuda court attempted to make such a determination, as demonstrated above, the scope of the arbitration provision is governed by U.S. federal law. Therefore, the anti-suit injunction does not prevent this lawsuit from going forward.

## II. Conclusion

Accordingly, after careful consideration and the Court being otherwise fully advised, and for the foregoing reasons as well as those stated in the Court's initial Order Denying Motion to Compel Arbitration (DE # 55), it is **ODRERED, ADJUDGED, and DECREED** that Defendant's Motion for Reconsideration (DE #57) be, and the same is hereby **DENIED.**

**DONE AND ORDERED** in Chambers, at Miami, Miami-Dade County, Florida, this 22nd day of March, 2010.

_____
JAMES LAWRENCE KING
UNITED STATES DISTRICT JUDGE

Cc:

**Counsel for Plaintiff**
James Madison Walker
Walker & O'Neill PA
7301 SW 57th Court
Plaza 57 Suite 430
South Miami, FL 33143
305-995-5300

Fax: 995-5310
Email: jwalker@cruiselaw.com

**Counsel for Defendant**
Jeffrey Bradford Maltzman
Maltzman Foreman PA
2 S Biscayne Boulevard
Suite 2300 One Biscayne Tower
Miami, FL 33131-1803
305-358-6555
Fax: 374-9077
Email: jmaltzman@mflegal.com
ATTORNEY TO BE NOTICED

Steve Holman
Maltzman Foreman PA
2 S Biscayne Boulevard
Suite 2300 One Biscayne Tower
Miami, FL 33131-1803
305-358-6555
Fax: 305-374-9077
Email: sholman@mflegal.com
ATTORNEY TO BE NOTICED